☑ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with Facebook USER ID<br>100008497180327 (better described in Attachment A) | )<br>)<br>)<br>)<br>)<br>) |

Case No.   22-849M(NJ)

**Matter No.: 2021R00463**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    3/4/22          *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    2/18/22 @ 1:32p.m.                                    
                                                    *Judge's signature*

City and state:    Milwaukee, WI                        Hon. Nancy Joseph, U.S. Magistrate Judge
                                                               *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID 100008497180327 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

## I.  Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)  All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from December 1, 2021 through January 31, 2022;

(c)  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from December 1, 2021 through January 31, 2022, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)  All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from December 1, 2021 through January 31, 2022, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from December 1, 2021 through January 31, 2022;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **fourteen days** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2119 (carjacking), 1951 (Hobbs Act Robbery) and 924(c) (use and brandishing of a firearm during a crime of violence) involving Robert E. Smith (DOB XX/XX/03) since December 1, 2021 through January 31, 2022, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence showing the use of Facebook to set-up robberies; evidence of communication between Robert Smith and his co-actor(s) and victims;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

3

events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to he searched<br>or identify the person by name and address)*<br>Information associated with Facebook USER ID<br>100008497180327 (better described in Attachment A) | )<br>)<br>)<br>)<br>) |

Case No.  22-849M(NJ)

**Matter No.: 2021R00463**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 (1) and 924 (c) | Motor Vehicle Robbery; Use and Brandishing of a Firearm During a Crime of Violence; |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Martin Keck, TFO FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date:  2/18/22

_____
*Judge's signature*

City and state:  Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Martin Keck, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Detective for the City of Wauwatosa Police Department.  I have been so employed as a law enforcement officer for over fifteen years.  Since October, 2018, I have been assigned as a federally deputized Task Force Officer (TFO) on the Federal Bureau of Investigation (FBI) Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code.  I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of United States Code.  I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in

criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities. That while being tasked with investigating violent crimes your affiant's investigations have been aided by subpoenas, warrants and court orders related to electronic communication records and subsequent analysis of those records; that in most of those cases, the records provided critical investigative leads and corroborative evidence.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2119 (carjacking), 1951 (Hobbs Act Robbery) and 924(c) (use and brandishing of a firearm during a crime of violence have been committed by Robert E. Smith (DOB XX/XX/03) and Sean A. Burke (DOB XX/XX/03). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

<u>**PROBABLE CAUSE**</u>

5.     I am assisting with the investigation of a series of armed robberies / armed robbery carjackings, which occurred in December 2021 and January 2022 in the County of Milwaukee, State of Wisconsin, as summarized below.

2

6.      On Sunday, December 12, 2021, at approximately 4:11pm, A.G. was the victim of an armed robbery in the Target store parking lot located at 1501 Miller Parkway, West Milwaukee, Wisconsin.

7.      A.G. reported to police officers that she was seated in the rear passenger seat of her father's 2021 Honda CR-V while the vehicle was parked in the Target parking lot.  She observed a gray, four-door sedan pull next to the passenger's side of the Honda.  Said sedan's front passenger and rear passenger exited the vehicle.  One of these passengers opened the front passenger door of the Honda CR-V and repeatedly told A.G. to exit the Honda.  A.G. exited the Honda and took a picture of the robbery suspect using her cell phone.  One of the suspect sedan's occupants, whom A.G. observed was armed with a handgun, ordered A.G. to give her cell phone to him.  A.G. complied with the suspect's demands and turned over her cell phone.  The suspects then left Target with the Honda and A.G.'s cell phone.  The theft of the phone and vehicle was done without consent.

8.      On December 16, 2021, officers from the Milwaukee Police Department (MPD) located and recovered the above-described Honda CR-V in front of 2940 North Richards Street, Milwaukee, Wisconsin.  The vehicle was processed at the recovery scene for evidence, which included fingerprint lifts.

9.      On January 4, 2022, MPD Latent Print Examiner Chet St. Clair examined the lifts from said Honda CR-V.  One of the lifts, recovered from a touch screen inside of the Honda CR-V, was identified as the left middle finger of Sean A. Burke (DOB XX/XX/03).

10.     West Milwaukee Police Officer Feuerstein tracked A.G.'s stolen iPhone to an ecoATM located inside a Pick N Save grocery store at 5700 West Capitol Drive, Milwaukee, Wisconsin.  The investigation revealed this phone was sold to the ecoATM by A.P.

3

11.     On January 5, 2022, West Milwaukee Police Det. Mitchell Brus spoke with A.P. by phone. A.P. advised Det. Brus she was given the stolen phone by one of her cousin's friend's she knows as "Sean." "Sean" gave A.P. the phone and asked her to deposit the phone into the ecoATM for him. A.P. stated "Sean" is usually with "Robby" and she believes they "hijack" people's vehicles. Det. Brus later met up with A.P. in person. Det. Brus showed A.P. Milwaukee County Sheriff's Office booking photos of Sean Burke (DOB XX/XX/03) and Robert Smith (DOB XX/XX/03). A.P. stated the booking photos were of the individuals she knew as "Sean" and "Robby".

12.     On Sunday, December 12, 2021 at approximately 6:25pm, J.M. was the victim of an armed robbery carjacking in the 1700 block of East Geneva Place, Milwaukee, Wisconsin.

13.     J.M. reported to police that she was approached by a black male while she was loading items into her gray, 2017 Lexus NX200T. The subject was armed with a black handgun and had gotten out of a silver or gray Honda CR-V prior to approaching J.M. The suspect pointed the gun at her chest. A second suspect exited the Honda CR-V and hid near the passenger side of her Lexus. The subject with the gun demanded J.M. to "Give me your purse!" J.M. replied that she did not have a purse. The suspect then stated, "Give keys to car and you do have a purse bitch!" J.M. complied and gave her keys to the suspect. Both suspects entered J.M.'s Lexus and fled the area, last seen going northbound on North Oakland Avenue from East Geneva Place. J.M. did not consent to being robbed.

14.     J.M. described the gunman as 18 to 23 years old, 6'00" to 6'01" tall, with a thin build. The gunman was wearing a black, hooded sweatshirt with the hood up, black faded jeans and a black ski mask with his eyes showing. The suspect was armed with a black handgun.

4

15.     J.M. described the second suspect without the gun as being 18 to 23 years old, 6'00" to 6'01" tall.  He was wearing black clothing and a black ski mask.

16.     On December 12, 2021 at approximately 6:38pm, which is less than fifteen minutes after the above-described Lexus robbery occurred, J.M.'s stolen Lexus was involved in a Hit and Run – Causing Injury crash at the intersection of North 27th Street and West Locust Street.  J.M.'s stolen Lexus was abandoned at the intersection.

17.     MPD Forensic Investigator Janel Vytlacil processed the Lexus at the accident scene for evidence.  She recovered fingerprint lifts from the vehicle.

18.     On December 13, 2021, Milwaukee Police Latent Print Examiner Chet St. Clair examined the lifts from J.M.'s stolen Lexus.  One of the lifts, recovered from the exterior of the passenger's side front door, was identified as being the right ring finger of Robert E. Smith (DOB XX/XX/03).

19.     On Tuesday, December 21, 2021, at approximately 5:47pm, G.B. was the victim of an armed robbery carjacking in the Target store parking lot located at 1501 Miller Park Way, West Milwaukee, Wisconsin.

20.     G.B. reported to police that she was loading her white 2017 Audi Q3 (registered to her mother) in the parking lot.  She was approached by a subject who told her to give him her keys while pointing a black handgun at her.  G.B. argued with the subject and refused to give up her keys before complying and throwing the keys on the ground.  The gunman picked up the keys and entered the Audi.  As the suspect closed the driver's door, G.B. put her foot into the door preventing it from closing.  An accompanying suspect in the vehicle's front passenger seat rolled down the window and a black male pointed a different black gun at her while stating that

5

he would shoot her. The first gunman that approached G.B. also threatened to shoot G.B. G.B. complied with the gunmen and both her Audi and the suspect vehicle fled the parking lot.

21.     G.B. further reported to police that a female who identified herself as "Jess" informed G.B. that "Jess" found the victim's backpack, which was stolen in the above-described robbery, outside of 1146 North 21st Street, Milwaukee, Wisconsin.

22.     On December 23, 2021, at approximately 5:05pm, MPD Officers recovered the above-described stolen Audi after a vehicle pursuit. Four juvenile suspects were arrested at the conclusion of the pursuit. A firearm was recovered in the flight path of the suspects.

23.     MPD Det. Sokolowski conducted a recorded Mirandized interview of one of the arrested juveniles, identified as K.L.G. (M/B XX/XX/05). During the interview, KLG stated they got the Audi from "Robbie P." KLG stated "Robbie P" did the carjacking, but KLG was not present for the robbery.

24.     On December 23, 2021, MPD Officers Domine and Lanza located a silver, four-door Chevy Impala, bearing Illinois registration plates, which was parked and unoccupied in front of 1150 North 20th Street, Milwaukee, Wisconsin. Due to unique damage to the vehicle, the officers recognized this was the suspect vehicle involved in a street robbery in which D.J. reported to MPD that she was robbed of her property at gunpoint by a black male suspect in the alley behind her residence on December 9, 2021.

25.     MPD Officers Domine and Lanza conducted covert surveillance of the Chevy Impala until two males, later identified as Sean A. Burke (DOB: XX/XX/03) and Robert E. Smith (DOB: XX/XX/03) got into the vehicle. MPD Officer Keller attempted to stop the Impala with a squad car equipped with emergency lights and siren. The driver of the Impala (Burke) fled from P.O. Keller, who then initiated a vehicle pursuit of the Impala. The pursuit ended after

6

the Impala crashed at 712 West Reservoir Avenue, Milwaukee, Wisconsin. Burke and Smith exited the vehicle and fled from officers on foot. The two were ultimately located and arrested.

26.    MPD Officers searched the Impala and located the following:

    a.    A black Glock 17, 9mm semi-automatic handgun with an extended magazine.

    b.    A black Taurus G3C, 9mm semi-automatic handgun with an extended magazine.

    c.    A black iPhone with a cracked screen.

27.    A records check of the Impala's VIN revealed the vehicle was reported stolen to the Milwaukee Police Department on October 28, 2021.

28.    I conducted a records check of both Robert E. Smith (XX/XX/03) and Sean A. Burke (XX/XX/03) and they are both listed as adjudicated delinquent in the State of Wisconsin Children's Court System, and subsequently prohibited from possessing firearms.

29.    MPD Officer Thao searched Smith following his arrest and located a white iPhone with a cracked screen and a green rubber case inside Smith's left pants pocket.

30.    That the recovered phones were inventoried into MPD Evidence as follows:

    a.    A white iPhone with a cracked screen and a green rubber phone case, currently stored as evidence and assigned MPD Inventory #21049504-1;

    b.    A black iPhone with a cracked screen, currently stored as evidence and assigned MPD Inventory #21049488-3.

31.    On December 23, 2021 MPD Det. Travis Jung conducted a recorded, Mirandized interview of Robert E. Smith (XX/XX/03). During the interview, Smith stated the following:

    a.    Smith confessed to being in possession of the Glock 17 that was recovered from inside of the Impala.

7

32.     On December 24, 2021, MPD Det. Michael Slomczewski conducted a recorded, Mirandized interview of Sean A. Burke (XX/XX/03).

>       a.  Burke confessed to being in possession of the other gun found in the vehicle (not the Glock).

>       b.  Burke confessed to committing an armed robbery in Milwaukee on December 9, 2021, while utilizing the above-described Impala.

33.     On December 28, 2021 MPD Det. Ross Mueller conducted a recorded, Mirandized interview of Burke.

34.     Burke stated that he was present for the armed robbery in the parking lot of the Target, which occurred on December 12, 2021.  He stated "they" were driving around looking for a vehicle to take.  They pulled up on the victim and then obtained her vehicle and phone during the robbery.  Burke identified the actors in the robbery through their Facebook pages, "donotdisturb" and "montaeoffdatreyzs."  These Facebook pages were later identified as belonging to Nicolaus C. Sharp (XX/XX/03) and a juvenile identified as A.D.K. (XX/XX/05).

35.     Burke further stated that he was present for the armed robbery carjacking in the parking lot of the Target, which occurred on December 21, 2021.  Burke identified the main actor in this robbery as "P."  He advised "P" is armed with a Glock containing a "switch" which allows the firearm to fire in full-automatic.

36.     Burke identified "Robbie P" as Robert E. Smith (XX/XX/03).  He stated "Robbie P" is not the same person that he identified as "P."

37.     I compared surveillance video of the suspect vehicle from the first robbery at the West Milwaukee Target (December 12, 2021), with surveillance video of the suspect vehicle from the second robbery at the West Milwaukee Target (December 21, 2021) and found all of

8

the vehicle features to be a match. Further, said surveillance video also matches the suspect vehicle involved in the Target parking lot robberies to the Chevrolet Impala involved in Smith and Burke's arrest. I believe the Chevrolet Impala involved in Smith and Burke's arrest is the same suspect vehicle from both of the robberies at the West Milwaukee Target store described above.

38.     Further, 1146 North 21st Street, which is the location where G.B.'s stolen backpack was found, is one block to the west of 1150 North 20th Street, which is the location where officers located and surveilled the Impala connected to Smith and Burke's arrest.

39.     On January 18, 2022, I obtained a search warrant for the two cell phones seized by the Milwaukee Police Department at the time of the arrests of Sean Burke and Robert Smith. The warrant (22-M-324(SCD)) was authorized by United States Magistrate Judge Stephen Dries.

40.     On January 19, 2022, I examined the two phones. I found the white iPhone found in possession of Robert E. Smith (XX/XX/03) at the time of his arrest had an assigned phone number of 414-699-2234. The black iPhone located inside of the recovered fleeing vehicle at the time of Burke and Smith's arrest had an assigned phone number of 414-946-1675.

41.     Robert Smith was released from police custody at the end of December 2021.

42.     On January 19, 2022, Milwaukee Police Officers and Detectives were dispatched to the address of 6662 North 55th Street, Milwaukee, Wisconsin, for a report of an armed robbery. Milwaukee Police Detective Matthew Davis spoke with the identified victim, K.L.M. (DOB XX/XX/00), who stated the following:

      a.     K.L.M.'s sister, L.A.C. (DOB XX/XX/03), contacted K.L.M. L.A.C. advised K.L.M. there was a person outside of the residence who wanted to purchase two

9

wigs for $500 that L.A.C. was selling on Facebook Marketplace. The purchaser contacted L.A.C. from the Facebook account "Lai La."

    b. K.L.M. packaged the two wigs in a bag and brought them outside. She approached a newer, clean, white SUV with dark tinted windows. As K.L.M. approached the vehicle, the driver's side rear window rolled down and a black male subject asked K.L.M. if she had the wigs. She stated, "For $500," at which point the subject produced a black semi-automatic handgun at pointed it at her. K.L.M. dropped the bag of wigs and ran back to the residence.

    c. K.L.M. described the suspect as a black male, 17-20 years old, with an unknown height. He had a thin build, was clean shaven, had dark colored eyes and his hair was described as "forehead length black twisties." He spoke in a deeper voice and was wearing a brighter, multi-colored hooded sweatshirt with the hood up and was armed with a black semi-automatic pistol with a silver barrel in his left hand.

43.    Officers on scene learned that L.A.C was contacted by the suspect who was utilizing the phone number 414-699-2234. Prior to police arrival, L.A.C. searched the phone number 414-699-2234 through CashApp and found the phone number was associated with an account named "Robbie P TreyDemon." L.A.C. then searched Facebook for "Robbie P TreyDemon" and found a Facebook page with that name. K.L.M. viewed photos posted on the Facebook account and recognized the person depicted in the photos as the same person who robbed her.

44.    The Facebook account "Robbie P TreyDemon" was identified as belonging to Robert E. Smith (M/B XX/XX/03). The Facebook page has a URL of https://www.facebook.com/TreyBaby39 and a Facebook ID number of 100008497180327.

10

45.     On January 19, 2022, Det. Davis showed a photo array containing Robert E. Smith (DOB XX/XX/03) to K.L.M.  K.L.M. viewed the array and positively identified Robert E. Smith (DOB XX/XX/03) as the individual that robbed her.

46.     I am aware that law enforcement was in possession of Robert Smith's seized iPhone at the time of the Facebook Marketplace robbery detailed in this affidavit.  Furthermore, the phone number the suspect called the victim from in this robbery matched the phone number of the phone seized from Robert Smith: 414-699-2234.  I am aware that an individual can visit a cellular store and have their telephone number registered to a new device.  Further, Robert Smith was out of custody at the time of the Facebook robbery.

47.     On January 22, 2022, the Milwaukee Police Department and Milwaukee Area FBI Violent Crimes Task Force executed a Milwaukee County Circuit Court authorized search warrant at 426 North 33rd Street, Milwaukee, Wisconsin.  This is the residence of Robert E. Smith.

48.     During the execution of the search warrant, Robert Smith was located and arrested.  A purple over black, loaded 9mm Taurus G2C firearm was located in the residence. Additionally, two cell phones believed to belong to Robert Smith were located inside of the residence.  The cell phones were identified and inventoried as follows:

    a.  Item 22002910-2 – a Samsung smart phone.

    b.  Item 22002910-5 – A LG smart phone with a shattered screen.

49.     The cell phones listed above are currently being stored at the Milwaukee Police Administration Building, located at 749 West State Street, in the City and County of Milwaukee, State of Wisconsin.

50.     On January 25, 2022, Milwaukee Police Detective Rolanda Gonzalez and West Milwaukee Police Detective Mitchell Brus conducted a recorded, Mirandized interview of Robert Smith.  During the interview, Robert Smith admitted to being with Sean Burke when Burke robbed a woman of her purse in the West Milwaukee Target parking lot.  Smith denied being present when any of the carjackings in the West Milwaukee Target parking lot occurred, but did help Sean Burke sell the Audi that was stolen on December 21, 2021.  Furthermore, Smith confessed to being present with Burke when the two stole the 2015 Chevy Impala from 415 North 32nd St. on October 28, 2021.  When asked about the carjacking of J.M.'s Lexus on December 13, 2021, Smith stated he was picked up by Sean Burke and another subject.  He stated he was picked up from his residence and he did drive the vehicle to "joyride" in it and knew the vehicle was stolen.  He knew the vehicle was involved in a serious motor vehicle crash because Burke told him that Burke was struck by another vehicle.  Smith denied participating in the robbery.  Lastly, regarding the Facebook Marketplace robbery of K.L.M. on January 19, 2022, Smith confessed to participating in this robbery.  He stated he was contacted by a female known as "Cici."  Cici asked Smith to rob the victim because Cici wanted the wigs and did not have enough money.  Cici told Smith she would pay him $120 to do the robbery.  Smith agreed to do the robbery because he needed the money.  Smith contacted his friend, "TBB Mari" because Smith needed a ride.  TBB Mari picked up Smith in a stolen Kia.  TBB Mari was in the vehicle with another subject known as "Bam."  Smith stated he drove the Kia during the robbery because he does not trust others to drive.  Smith stated when they arrived at the house, he called the seller of the wigs with his own phone.  While waiting for the victim to bring them the wigs, Smith received an important phone call from his uncle who is in jail.  Because the call was important, Smith told "Bam" to commit the robbery.  Bam tried to forcefully take the wigs from

the victim when she came out, but the victim resisted. Smith denied knowing Bam had a gun on him until Bam pulled the gun out during the robbery. The wigs were acquired in the robbery and Smith drove them to Cici who paid him $120.

51.     On January 26, 2022, Det. Gonzalez conducted a second interview of Robert Smith. During the interview, Smith was questioned about the purple and black Taurus firearm recovered from the residence. Smith was shown a picture of the firearm and he stated he recognized it. Smith admitted to possessing it on several past occasions, and that he carried it for protection. Smith stated he knew he was not allowed to lawfully possess a firearm. Smith identified a booking photo of A.Q.H. (DOB XX/XX/XX04) as "TBB Mari." Smith stated "Bam" had a silver firearm during the robbery, and Smith did not know if the firearm was real.

52.     On January 31, 2022 A.Q.H. (DOB XX/XX/XX04) was arrested by Milwaukee Police Officers Austin Domagalski and Anthony Milone during a traffic stop.

53.     On January 31, 2022 Milwaukee Police Det. Matthew Davis conducted a recorded, mirandized interview of A.Q.H. (DOB XX/XX/XX04). During the interview, A.Q.H. stated that he was in a vehicle with Robert Smith and other subjects. A.Q.H. fell asleep in the back seat behind the front passenger seat because he was high. A.Q.G. observed a female walking up to the vehicle on the driver's side and that Robert Smith was driving the vehicle. A.Q.H. stated that a subject he knows as "Bam" was sitting in the back seat next to him and behind Robert Smith (the driver) and that "Bam" produced a pistol and robbed the female at gunpoint for the wigs. A.Q.H. was shown an MPD booking photo of D.M.J. (DOB XX/XX/XX06) and A.Q.H. identified D.M.J. as the person he knows as "Bam."

54.     On February 4, 2022, Milwaukee Police Det. Gonzalez conducted a recorded, mirandized interview of D.M.J. (XX/XX/XX06) after he was arrested. During the interview,

13

D.M.J. stated he was with Robert Smith, and A.Q.H., and identified the fourth actor as K.L.C. (DOB XX/XX/XX05) via an MPD Booking Photo of K.L.C. D.M.J. stated that he knew K.L.C. as "Kel." D.M.J. continued to explain that all four of them were hanging out, when Robert Smith stated, "We gonna bust some moves!" D.M.J. stated that while Robert Smith was saying this, he was displaying his handgun, which D.M.J. identified as a black and purple Taurus 9mm semi-automatic handgun. It should be noted that this exact handgun was recovered when Robert Smith was arrested a few days prior to D.M.J.'s arrest. D.M.J. stated Robert Smith then explained that they were going to take some wigs from a lady, and then give the wigs to another girl who was going to pay them for stealing the wigs for her. D.M.J. stated that they then got into a white, Kia Sorento, and drove to the location to commit the robbery. D.M.J. stated that he knew the Kia was a stolen vehicle because the ignition was damaged. D.M.J. stated that he knew they were going to commit the robbery, but claimed that he did not know anyone was going to use a gun during the robbery. D.M.J. stated that he was positioned in the rear passenger seat, Robert Smith was the driver, A.Q.H. was the rear driver, and K.L.C. was seated in the front passenger seat. D.M.J. stated that when they arrived to the location, Robert Smith used his phone to call the lady who was supposed to be selling the wigs to let her know that they were outside. D.M.J. stated that the lady walked outside from her residence. D.M.J. stated the victim approached the window where A.Q.H. was seated, and A.Q.H. lowered the window down just enough to signal for the victim to go towards the front driver's window, which is where Robert Smith was seated. D.M.J. stated that when she made it to the front driver's window, Robert Smith lowered his window and immediately pointed the black and purple Taurus at the victim, then took the bag of wigs from her. D.M.J. stated that they then fled from the location and proceeded to deliver the wigs to the girl that asked them to commit the robbery. D.M.J. stated that Robert Smith was paid $120.00 for

14

the robbery, which he then split up among the robbery participants. D.M.J. stated that Robert Smith kept $60.00 for himself, and then gave $20.00 to A.Q.H., K.L.C., and D.M.J. D.M.J. stated that he remembers A.Q.H. being upset because he felt like he should have been given more money. D.M.J. denied being the subject that pointed the gun at the victim or touching the bag containing the wigs.

55. Meta owns and operates Facebook, a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

56. Meta asks Facebook users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresseses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

57. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15

58.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

59.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

60.     Facebook users can upload photos and videos, to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

61.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content

16

unless deleted by the user, and also retains transactional records related to voice and video chats. of the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

62. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

63. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

64. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

65. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

66. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

67. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

17

68.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

69.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location

70.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

71.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

18

residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

72.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

73.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

19

to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

74.  Based on the foregoing, I request that the Court issue the proposed search warrant.

75.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

76.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

77.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

78.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Case 2:22-mj-00849-NJ   Filed 02/18/22   Page 29 of 36   Document 1

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100008497180327 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from December 1, 2021 through January 31, 2022;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from December 1, 2021 through January 31, 2022, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from December 1, 2021 through January 31, 2022, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from December 1, 2021 through January 31, 2022;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **fourteen days** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2119 (carjacking), 1951 (Hobbs Act Robbery) and 924(c) (use and brandishing of a firearm during a crime of violence) involving Robert E. Smith (DOB XX/XX/03) since December 1, 2021 through January 31, 2022, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)  Evidence showing the use of Facebook to set-up robberies; evidence of communication between Robert Smith and his co-actor(s) and victims;

(b)  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

3

events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b. such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

5

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____           _____
Date                                      Signature

Case 2:22-mj-00849-NJ   Filed 02/18/22   Page 36 of 36   Document 1